## BARTELS vs. HARRIS.

Where a creditor, who was also the surety of a debtor on the eve of stopping
payment, received from him his whole stock in trade, accompanied by a bill
of parcels, at the foot of which payment was receipted in the usual form ; and
at the same time the parties executed an indenture of two parts, declaring the
conveyance to be intended as security for the debt due to the grantee and cer-
tain others, for which he stood liable as surety or indorser, with power to sell for
payment of these debts, and a covenant to pay over the surplus to the debtor or
his order on demand ;—it was held that both the instruments taken together
amounted to a mortgage ; and that it was a valid transaction against other
creditors for whose debts no provision had been made ; the jury having found
that no fraud was actually intended.

THIS was an action of replevin, against a deputy sheriff, for
divers goods, the property of which the defendant alleged to be
in one *John B. Cross*, against whom he had several precepts, by
virtue of which the goods were attached, *July* 15, 1825.

At the trial, which was before the Chief Justice, the plaintiff
produced a bill of parcels of the goods, made by *Cross* to him,
comprising his whole stock in trade, and receipted in full in com-
mon form, bearing date *July* 8, 1825. He also exhibited one
part of an indenture of two parts, made on the same day, between
him and *Cross*, reciting the transfer of the goods by the bill of
parcels, to the amount of $4466,02, and that this transfer was
made " to secure in part the said *Bartels* for sundry liabilities he
" is under for said *Cross* by reason of his having indorsed several
" notes of hand made and signed by said *Cross*, and also to secure
" said *Bartels* and his partner for a certain sum due them on book
" account, and for a note indorsed by them,"—which liabilities
are enumerated, amounting to something over 8000 dollars ;—
and by which it was agreed between the parties that *Bartels*
should make sale of the goods to the best advantage, and apply
the proceeds to the payment of the enumerated debts, and after-
wards account with *Cross* for the balance, should any remain in
his hands.

One of the subscribing witnesses testified that on the day the
writings were signed, he was asked by the plaintiff if he would

attend his store; saying he expected to purchase *Cross's* goods ;—that he was sent for on Saturday night, *July* 9, about sunset, to witness the signature of the papers at *Cross's* store, where a formal delivery was made of the goods. At this time *Bartels* said to the witness that it might be as well not to mention the transaction, till he and *Cross* should return from *Calais,* to which place they were immediately going, and did set out on the following day, for the purpose, as *Bartels* said, "to secure the property which *Cross* had there"—he having at that place another store of goods, and a large quantity of lumber. *Bartels* left the witness in possession of the store, engaging to see him paid for his services, but without stipulating for any certain sum ; and instructed him not to mention the conveyance, but to keep up the name of *Cross* over the door, unless the creditors of *Cross* should "make a stir;" in which case he advised him to put up the witness's own name in its stead, especially if *Seaver,* (who afterwards was the principal attaching creditor,) should make a stir ; but he left it to the judgment of the witness. The store was accordingly kept open, under the name of *Cross* ; but on Wednesday or Thursday the witness deemed it prudent to take down that name and put up his own ; and on Friday *Seaver* caused the goods to be attached.

The writings were prepared by *Cross,* and conveyed all his visible attachable property, except his household furniture, and his goods at *Calais.* He was the brother in law of the plaintiff, and was at this time reputed to be insolvent. No persons were present at the transaction except the witness before mentioned, and the two clerks of the parties.

It was proved by the defendant that *Bartels,* after his return from *Calais,* told *Seaver* that the object of the conveyance was to prevent attachments, and to prevent *Cross* from being broken up ; observing at the same time that he had not been aware of the extent of *Cross's* debts,—that he was liable to a large amount as his indorser,—and that he was apprehensive the property would not be sufficient to secure himself. *Seaver* complained that *Bartels* had taken a conveyance of all the visible property, leaving nothing for other creditors to attach ; and asked him why he had not taken an assignment of his notes and accounts ; to which he

replied in substance as before, that the object was to prevent attachments. It was also proved by the defendant, that on the Monday or Tuesday after they started for *Calais*, the witness whom *Bartels* had left in charge of the store, being asked where Mr. *Cross* was, replied that he had "gone out;" leaving it to be inferred that he was in town about his ordinary business.

Upon this evidence, the Chief Justice instructed the jury that as the deed of conveyance from *Cross* to the plaintiff referred to the schedule or bill of parcels as containing an enumeration and description of the goods conveyed, they might both be taken as parts of the same conveyance; and as the deed contained a statement of the grounds and reasons for making it, and on the face of it appeared to be, and was intended to be, a conditional conveyance, the mere addition of the words " received payment," which preceded the name of *Cross* at the bottom of the bill of parcels, and the form of the bill itself, would not alter the case; and that therefore it might and ought to be considered as a mortgage of the property, and not an absolute sale. He also instructed them that if they should be satisfied from all the evidence that the conveyance or mortgage was given to and received by the plaintiff, not for the purpose therein specified, of securing him against his liabilities on *Cross's* account, but for the purpose of defeating the rights of other creditors, and in this manner obtaining the property and appropriating it to the use and benefit of *Cross*, then they ought to set aside the conveyance as fraudulent, and find for the defendant. But if, from a view of all the evidence, they should be of opinion that the conveyance was made by *Cross*, and received by the plaintiff, with an honest intention to protect himself, as far as he could by its means, from loss on account of his liabilities as surety for *Cross* and his demands against him; then the mortgage was valid in law, although by receiving it, and obtaining the goods conveyed by it, he also intended to prevent or defeat the attachments of other creditors; because such a defeat of attachments would be the necessary consequence of a fair, honest, and legal conveyance of the goods to the plaintiff; and of course they ought to find for the plaintiff; which they accordingly did. And the question whether these instructions were

correct ; and whether the verdict was against law, or the weight of evidence, was on motion of the defendant referred to the court.

*Orr* and *Greenleaf*, for the defendant, argued that the transaction, was a legal fraud upon creditors. The bill of parcels was in the usual form, and was receipted ; to enable *Bartels* to shew to the world an absolute title to the goods. Yet no consideration was paid, not even by cancelling his own debt. Being intended only as a protection against liabilities, it should have been in terms a mortgage ; otherwise, it is void. *Gorham v. Herrick* 2 *Greenl.* 87. If both of the instruments are to be taken together, they amount to a receipt and release under seal, which *Cross* would be estopped to deny, should he attempt to set up the delivery of the goods in bar of an action by *Bartels* for the debt due to himself.

If it was not an absolute conveyance to *Bartels*, then it created a tenancy in common between *Cross* and his creditors, who might lawfully attach his interest in the goods ; *Bartels* being placed in the situation of a trustee, acting in their behalf. *Estwick v. Caillaud* 5 *D. & E.* 420, 423.

But the case shews conclusive evidence of fraud ; of which the court are the proper judges. The conveyance was made by an insolvent debtor, to his brother in law, secretly, of all his tangible property, for the avowed purpose of preventing attachments, and without the payment of any consideration. Its object and effect were to delay creditors, and turn them round to another remedy, and this too against a trustee of the debtor's own appointment. The law entrusts to a debtor no such power. 4 *Dal.* 88. 4 *Day* 150, 151, 156. In its best form it appears to have been a contrivance between the debtor and one creditor, to delay the others ; and therefore is void. 5 *D. & E.* 421. The subsequent payments of the plaintiff do not affect the case ; for if the conveyance was void for fraud in the concoction, it cannot stand as a security for subsequent advances. *Sands v. Codwise 4 Johns.* 536. *Merrill v. Meacham* 5 *Day* 341. On these grounds they insisted that the verdict was manifestly against the evidence in the cause, and ought therefore to be set aside.

*Longfellow,* for the plaintiff, contended that the bill of parcels and the indenture, being taken together, amounted to nothing more than a conditional conveyance, or mortgage, to secure the plaintiff against his liabilities as the surety of *Cross,* with power to sell for that purpose. His liabilities formed a sufficient consideration for this sort of conveyance ; and all intention of fraud on the part of the plaintiff is negatived by the finding of the jury. No tenancy in common can exist in these cases unless the conveyance is absolute ; nor unless the property conveyed is more than sufficient to pay the debts of the grantee ; but here the case finds a great deficiency.

As to the motion to set aside the verdict, it is never done unless the Judge certifies that he is dissatisfied with it ; nor even then, if there was evidence submitted on both sides. 6 *Dane's Abr.* 245, 253. 7 *Mass.* 205. *Ward v. Center 3 Johns.* 271. *De Fonclear v. Shottenkirk 3 Johns.* 170.

WESTON J. at the ensuing *June* term in *Kennebec,* delivered the opinion of the Court as follows.

The plaintiff in this action having a book account against *John B. Cross* for seven hundred and fifty dollars, and having also made himself liable as indorser and surety for said *Cross* for upwards of seven thousand dollars, took a transfer of his stock in trade, amounting to four thousand, four hundred and sixty six dollars. There was executed at the time of the transfer a certain indenture, by which the plaintiff covenanted to sell the goods transferred to him upon the best terms in his power, and, after deducting the necessary expenses, to apply the proceeds to the payment of his own demand, and of such sums as he had become liable for and to pay over the surplus, if any should remain, to the said *Cross.* Another instrument executed at the same time, was a particular schedule of the said goods, which was referred to in the indenture. Both papers were attested by the same witnesses. The schedule was in the form of a common bill of parcels ; closing with the words " received payment," and signed by *Cross.* There was no reference in the schedule to the indenture. The judge, who

presided at the trial, instructed the jury that the indenture and the schedule referred to therein, constituted but one instrument, and that, notwithstanding the form of the schedule, and the words "received payment," which were explained in the indenture, the consideration for the transfer being there fully set forth, it was to be deemed in the nature of a mortgage of the property, and not an absolute sale of it.

This construction is resisted upon the ground that as the schedule, or bill of parcels, is itself evidence of an absolute sale or transfer, and has no reference to the indenture, the sale must be regarded as absolute and therefore within the principle of the case of *Gorham v. Herrick*, cited in the argument, liable to be defeated by subsequently attaching creditors. The form of the schedule, connected with other facts of a suspicious aspect, unexplained, might be a circumstance indicative of fraud; but being expressly referred to in the indenture, and its extent and meaning there specially stated and limited, we must consider the schedule as qualified by the indenture, and gather the intention of the parties from both these papers; and viewing them together the meaning is too plain to be misunderstood. The evidence of fraud, so far as it may arise from the form of the papers, is in a great measure repelled by the fact that they were both attested by the same witnesses, three in number, by a resort to either of whom, the existence of the indenture could have been ascertained; although it is not noticed in the schedule.

The plaintiff, being the creditor and surety of *Cross* to a large amount, had a right to take measures for his security. For his own debt he was at liberty to have taken an absolute transfer, or a qualified one. The consideration of his liabilities, he having then made no actual payments on that account, was sufficient to justify a qualified transfer of the goods, for the purposes of indemnity, which is the ground distinctly stated in the indenture; unless the object of it was to defeat or to delay other creditors. The evidence, tending to shew this, was submitted to the jury, and they were instructed to consider the transfer as invalid against the creditors of *Cross*, if they were satisfied, it was made, not to secure the plaintiff, but to defeat or delay them. But that if the

plaintiff's object was to defeat other creditors, in order to secure himself, he might lawfully do this, having a just right to prefer himself to others, and if they were defeated or delayed, this consequence could have no tendency to vitiate the transaction. The jury found for the plaintiff; and we do not perceive any ground upon which the verdict can be disturbed. The amount of the goods was insufficient for the plaintiff's indemnity. The plaintiff, being deeply involved as the surety of *Cross*, and believing him to be insolvent, was well justified in resorting to all lawful means for his indemnity. Under these circumstances, his own security must necessarily have been the motive, which quickened his diligence, and viewing the nature of the transaction, as detailed in both the papers, we cannot regard the conclusion, to which the jury have arrived, as unsupported by the evidence.

It has been urged that, upon the facts proved, the judge should have distinctly instructed the jury, that this was a clear case of legal fraud. In the case of *Estwick v. Caillaud*, 5 D. & E. 420, cited in the argument, the court say that fraud is sometimes a question of law, sometimes a question of fact, and sometimes a mixed question of law and of fact ; and that if a decision is to be had on the face of the deed, that is a question of fraud in point of law. The law will be the same in regard to any other instrument in writing, not under seal, where the evidence of fraud appears in the instrument itself. There were strong circumstances in the case cited, from which to infer legal fraud ; which was however repelled by explanatory evidence. As the deed itself furnished no proof of fraud, the question was left at large to the jury, whether it was a fair transaction between the parties without meaning to defraud other creditors ; and a verdict being returned for the plaintiff the court refused to set it aside.

In the case before us, no evidence of fraud arises in our opinion, from the papers taken together. The course pursued by the plaintiff appears to have been somewhat indiscreet ; and in some parts of it, he manifests a disposition to conceal his operations from the observation of *Cross's* other creditors ; but this seems to have been done rather with a view to secure himself from loss, than to favor *Cross* at their expense; his claims are as meritorious,

Bartels *v.* Harris.

and entitled to as much favor, when limited to the payment of his own debt, and to indemnity for the sums for which he stood responsible, as those of other creditors. The declarations made, and circumstances relied upon, as evidence of fraud, being susceptible of explanation, and capable of being understood in a sense which would leave the plaintiff free from the imputation of being influenced by any intention to defeat other creditors, except what must necessarily arise from the measures he had a right to pursue to secure himself, it presented a case falling within the province of the jury ; and was in our opinion submitted to them with proper instructions from the presiding judge.

The case finds that there was no surplus; but if there had been, it was accessible to creditors, through the medium of the trustee process. There is no foundation for the position, that by reason of this possible surplus, *Cross* was tenant in common with the plaintiff; and that the latter could not therefore be entitled to maintain replevin. The interest of the mortgagee, either of real or personal property, is distinct, several, and paramount, and entitles him to possession in all cases, where the thing pledged is a personal chattel ; and also, where it consists of real estate ; unless it is otherwise expressly agreed in the deed.

The motion to grant a new trial is overruled and there must be
*Judgment on the verdict.*